UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PAUL ADDISON EBY,

                              Plaintiff,

                                                         DECISION AND ORDER

                                                         15-CV-6543L

            v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                              Defendant.

_____

        Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner").  The action is one brought pursuant to 42 U.S.C. § 405(g) to review the Commissioner's final determination.

        On January 9, 2014, plaintiff, then twenty-six years old, filed an application for a period of disability and disability insurance benefits, and an application for Supplemental Security Income benefits under Title II of the Social Security Act.  In both applications, plaintiff alleged an inability to work since October 30, 2013.  (Administrative Transcript, Dkt. #9 at 15).[1]  His applications were initially denied.  Plaintiff requested a hearing, which was held on May 14, 2014 before Administrative Law Judge ("ALJ") John P. Costello.  The ALJ issued a decision on

_____

[1] Note that the Administrative Transcript (Dkt. #9) portions cited herein are identified by the page numbers assigned at the time of filing and docketing, and printed at the top of each page, rather than to internal document numbers or Bates-stamped pagination.

April 16, 2015, concluding that plaintiff was not disabled under the Social Security Act.  (Dkt. #9 at 15-24).  That decision became the final decision of the Commissioner when the Appeals Council denied review on July 16, 2015.  (Dkt. #9 at 5-7).  Plaintiff now appeals from that decision.  The plaintiff has moved (Dkt. #10), and the Commissioner has cross moved (Dkt. #13) for judgment on the pleadings pursuant to Fed. R. Civ. Proc. 12(c).  For the reasons set forth below, the plaintiff's motion is denied, the Commissioner's cross motion is granted, and the Commissioner's decision that plaintiff is not disabled is affirmed.

DISCUSSION

Determination of whether a claimant is disabled within the meaning of the Social Security Act requires a five-step sequential evaluation.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986).  *See* 20 CFR §§404.1509, 404.1520.  If the ALJ concludes that the claimant is not engaged in substantial gainful employment and suffers from a severe impairment, the ALJ examines whether the claimant's impairment meets or equals the criteria of those listed in Appendix 1 of Subpart P of Regulation No. 4.  If the impairment does, and has continued for the required duration, the claimant is disabled.  If not, analysis proceeds and the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See* 20 CFR §404.1520(e), (f).  If the claimant's RFC permits him to perform relevant jobs he has done in the past, he is not disabled.  If not, analysis proceeds to the final step, and the burden shifts to the Commissioner to show that the claimant is not disabled, by presenting evidence demonstrating that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his

age, education, and work experience.  *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.1999) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir.1986)).  *See also* 20 CFR §404.1560(c).

The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards.  *See* 42 U.S.C. § 405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  "The Court carefully considers the whole record, examining evidence from both sides 'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Tejada v. Apfel,* 167 F.3d 770, 774 (2d Cir. 1998) (quoting *Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir.1997)).  Still, "it is not the function of a reviewing court to decide *de novo* whether a claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute our judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

The ALJ summarized plaintiff's medical records, particularly his treatment notes for bipolar disorder and attention deficit hyperactivity disorder ("ADHD"), which he concluded together constituted a severe impairment not meeting or equaling a listed impairment.  I believe the evidence supports the ALJ's findings concerning plaintiff's nonexertional limitations, and that his finding that the plaintiff was not disabled was supported by substantial evidence and contained no legal error.

When assessing nonexertional limitations, in addition to the usual five-step analysis, the regulations "require application of a 'special technique' at the second and third steps of the five-step framework." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). If the claimant is found to have a medically determinable mental impairment, the ALJ must assess the claimant's degree of resulting limitations in four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation. 20 CFR §404.1520a(c)(3). If and how the analysis proceeds from that point depends upon the degree of impairment found. However, the ALJ must document his analysis, and his written decision must "reflect application of the technique, and . . . 'include a specific finding as to the degree of limitation in each of the [four] functional areas.'" *Kohler*, 546 F.3d 260 at 266, *quoting* 20 CFR §404.1520a(e)(2).

Here, the ALJ found that the plaintiff was mildly restricted in activities of daily living, moderately restricted in social functioning, moderately restricted with regard to concentration, persistence and pace, and had experienced no episodes of decompensation. He determined that plaintiff could perform work at all exertional levels, with a non-exertional limitation restricting him to work that is low-stress and goal-oriented (as opposed to production pace work), involves only simple tasks, and requires no more than occasional interaction with coworkers and the general public. (Dkt. #9 at 19).

The plaintiff initially argues that the ALJ failed to properly consider whether plaintiff was *per se* disabled under Listing 12.04, Paragraph B, of Appendix 1 to 20 C.F.R. Part 404, Subpart P. Paragraph B of Listing 12.04 specifies that an individual is disabled if he suffers from a mood disorder which results in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; and (3)

4

marked difficulties in maintaining concentration, persistence or pace.  Plaintiff argues that his inpatient psychiatric hospitalization (for six days in December 2013, after expressing suicidal thoughts), followed immediately by eight months of outpatient therapy (three hours, three days a week) as part of a part-time program designed to serve mentally ill persons with marked functional limitations, provides sufficient evidence of his marked limitations to satisfy the requirements of Listing 12.04.  Plaintiff further points to his ongoing restrictions in activities of daily living, social functioning, and concentration, persistence, and pace, as demonstrated by his alleged inability to consistently engage in self-care and housekeeping without supervision and direction, his lack of friendships and isolation, and his inability to complete routine tasks, such as paperwork, without prompting and/or assistance.

The Court disagrees.  The ALJ's finding that Listing 12.04 does not apply was based on substantial evidence in the record, including: (1) treatment notes and self-reports by plaintiff noting that plaintiff lives independently and performs most activities of daily living, including shopping by himself, preparing meals, cleaning, driving, maintaining personal hygiene and washing laundry (the latter with prompting and sometimes assistance from relatives); (2) plaintiff's testimony that although he had no friends, he interacted with family members and with others online, and treatment records attesting to plaintiff's appropriate and pleasant interactions with therapists and physicians; and (3) examination notes and the opinions of examining and reviewing physicians, showing that plaintiff has intact and appropriate thought processes, insight and judgment, and attention and concentration ranging from normal to moderately impaired.  *See e.g.,* Dkt. #9 at 398-99 (examining psychiatrist notes that plaintiff's thought processes are "[c]oherent and goal directed");  426 (therapist notes that plaintiff's attention span is "good [at] app[ointment]");  448-48 (therapist notes that plaintiff's short and long-term memory are "intact"

5

and that his mood and affect are "within normal limits"), 454 (therapist notes that plaintiff's thought processes are "goal directed" and "logical"), 470 (same), 482 (therapist notes that plaintiff's thought processes are "logical" and attention span is "within normal limits"), 498 (therapist assesses plaintiff's thought processes as "goal directed" and attention span "within normal limits"), 541 (intake examination shows normal attention span and concentration), 545 (follow-up examination noting normal attention span and concentration), 549 (same), 553 (same), 556 (same), 561 (same), 565 (same), 569 (same), 573 (same), 601 (attention span "within normal limits" on examination, although plaintiff reports difficulties with production pace at work due to a recent change in the procedures).  The ALJ also referred to plaintiff's self-reported ability to focus on leisure activities, such as video games, as evidence of plaintiff's ability to concentrate.  I find that the record as a whole supports the ALJ's finding that plaintiff's limitations in daily living, social functioning, and maintaining attention and concentration are only mildly or moderately impaired, and that Listing 12.04 is therefore not applicable.

Plaintiff also argues that the ALJ's conclusion concerning plaintiff's RFC (and thus, his finding that plaintiff could perform the various jobs identified by the vocational expert in response to the ALJ's hypothetical hearing questions) was not supported by substantial evidence. Specifically, plaintiff contends that the ALJ's conclusion that plaintiff could maintain mood stability (attention and concentration) was erroneous and unsupported, because it relied on the opinions of an examining psychiatrist and reviewing physician, while largely rejecting opinions and treatment notes from plaintiff's treating sources that reflect difficulties with concentration – chiefly, an opinion rendered by nurse practitioner Ms. Donna Ridley Wilber that plaintiff is "unable to work," and treatment notes by members of plaintiff's therapy team which occasionally reference plaintiff's difficulty in focusing and maintaining a train of thought.

6

To the extent that the ALJ was required to at least consider the opinion of Ms. Wilber and the observations of other treatment team members because of their consistent and lengthy treatment history with plaintiff, I find that the weight afforded to those opinions and notes by the ALJ was proper.  For example, the portion of Ms. Wilber's opinion (rendered in the form of a cursory, one-page letter consisting of only two substantive paragraphs) that the ALJ rejected was her statement that in her "clinical opinion," given his diagnoses of ADHD and bipolar disorder, and "significant anxiety and panic which will be further explored," plaintiff would be "unable to work for the foreseeable future."  (Dkt. #9 at 306).  *See e.g.*, *Snell v. Apfel,* 177 F.3d 128, 133 (2d Cir. 1999) (the ultimate issue of disability is reserved for the Commissioner, and conclusory opinions on that issue, even when rendered by a treating physician, are appropriately ignored by an ALJ).  *See also* 20 C.F.R. § 404.1527(e)(1).  Furthermore, while plaintiff's treatment notes contain sporadic references to plaintiff's being (or becoming) distracted during some of his therapeutic visits, the record likewise contains multiple notations (many of which are listed and discussed, *supra,* at p.5-6) that plaintiff is capable of direct, focused and cogent thought with intact memory and normal attention and concentration.  Indeed, it appears that on the vast majority of occasions when plaintiff presented to his treating therapy team members, they assessed him as having attention and concentration within normal limits, supporting the ALJ's conclusion that plaintiff's ability to maintain attention and concentration is moderately, rather than markedly, limited.  The RFC determined by the ALJ, which limits plaintiff to performing low-stress, goal-oriented work (and not production pace work), involving only simple tasks, adequately accounts for plaintiff's moderate limitations in attention and concentration.  *See generally Smith v. Colvin,* 2016 U.S. Dist. LEXIS 44748 at *11-*12 (D. Conn. 2016) (collecting cases and noting that "there are numerous cases holding that when medical evidence

7

demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, limiting a claimant to only unskilled work sufficiently accounts for those limitations") *report and recommendation adopted*, 2016 U.S. Dist. LEXIS 37578 (D. Conn. 2016).

I have considered the rest of the plaintiff's claims, and find them to be without merit.

CONCLUSION

For the forgoing reasons, I find that the ALJ's decision was supported by substantial evidence, and was not based on legal error. The plaintiff's motion for judgment on the pleadings (Dkt. #10) is denied, the Commissioner's cross motion for judgment on the pleadings (Dkt. #13) is granted, and the Commissioner's decision that plaintiff is not disabled is affirmed in its entirety.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
January 3, 2017.